ANNE NOBILE, PETITIONER-DEFENDANT, v. UNION ENGINEERING CORP., RESPONDENT-PROSECUTOR.

Submitted May 6, 1947—Decided October 20, 1947.

Before Justices DONGES, COLIE and EASTWOOD.

For the respondent-prosecutor, *James J. Skeffington.*

For the petitioner-defendant, *David Roskein (John A. Laird,* of counsel).

The opinion of the court was delivered by

COLIE, J.   This is a workmen's compensation case in which the Bureau dismissed the petition for failure of proof that the meningitis which resulted in the employee's death was caused by the accident which occurred on June 27th, 1944. On appeal, the Hudson County Common Pleas reversed the Bureau and found that the deceased "suffered an accident on June 27th, 1944, * * * arising out of and in the course of his employment, in which he received injuries which caused his death on July 13th, 1944." *Certiorari* was allowed to review the judgment in the Common Pleas.

Decedent, on June 27th, 1944, was employed by respondent. On that date, according to the testimony of a fellow-employee, decedent "bunked" his head and his forehead was lacerated. There was testimony that prior to the accident he was well and when he returned home for lunch on the same date, he had a cut over his left eye and a swelling. He took aspirin, was pale, held his hand to his head and ate nothing. He continued to work until July 6th when a Dr. Shuck was called and gave him medication. Dr. Shuck was not produced as a witness and there is nothing in the record to indicate what condition Dr. Shuck sought to remedy by medication.   On July 10th, Dr. Michael Pacicco was called in, Dr. Shuck being unavailable. Prior to July 10th and on July 3d, decedent had visited Dr. Pacicco, complaining of headaches and dizziness and is said to have given the doctor a history of having been struck on the head by a falling piece of steel. Dr. Pacicco examined his head and found no evidence of traumatic injury. The second time that Dr. Pacicco saw decedent on July 10th, he diagnosed his condition as cerebral hemorrhage and sent him to the hospital where he died July 13th.

There was evidence from lay witnesses that subsequent to the accident of June 27th, decedent's disposition underwent a marked change and that he became "drowsy-looking," "strange," "not jolly as before," "in a fog," and was uncommunicative and irritable. The death certificate was not printed in the record although admitted in evidence but both briefs concede that the cause of death is therein stated as meningococcic meningitis.

The main witness called to establish the case of the petitioner in the Bureau was Dr. Robert H. Stockfisch, a specialist in neurology and psychiatry. His testimony needs careful analysis, for without it there is no medical evidence to support an award. Dr. Stockfisch, in answer to a hypothetical question, gave as his opinion that "death by reason of a terminal meningococcus meningitis is related to the accident that took place on the day in question, June 27th, 1944." An analysis of the reasons in support of his opinion detracts considerably from the weight to be accorded to it. The doctor went on to say that it was his opinion that "by reason of the initial injury on the date in question, this man did sustain a degree of cerebral concussion" and later he said that "by reason of the injury to the brain its resistance is lowered and therefore made it an easier place for the meningococcus to fertilize and come into activity." On cross-examination, the following questions were asked and answers given.

"*Q.* And did you assume from the facts as given to you that there was any brain injury? *A.* I drew the conclusions as I stated in my summing up of how I came to figure out why there was relationship, that by reason of the blow changes did take place within the brain.

"*Q.* Well, what I want to know, doctor, so that we have it squarely on the record, is it your conclusion that there was a brain injury? *A.* Yes, in the nature of a concussion."

It was brought out that each of the facts which the doctor said were indicative of a brain injury could be present in the case of a meningococcus meningitis, excepting the single fact that the deceased was dazed.

As we read the testimony of Dr. Stockfisch, we are led to the inescapable conclusion that his opinion that "death by

reason of a terminal meningococcus meningitis is related to the accident" is founded upon a false premise, namely, that there was a concussion of the brain, or, as he put it, "a degree of cerebral concussion;" "in the nature of a concussion." The term "concussion of the brain" has a definite meaning in medical science. Gould's Medical Dictionary (*2d ed.*) defines it "as a condition produced by a fall or blow on the head, marked by unconsciousness, feeble pulse, cold skin, pallor." Dr. Henry H. Kessler in his book "Accidental Injuries," says: "Concussion is best defined as that condition which follows a head injury with loss of consciousness over a variable period of time." The record in this case is barren of evidence of unconsciousness following the accident.

The absence of competent testimony to establish a causal relation between the injury of June 27th and death from meningococcus meningitis on July 13th is a fatal weakness in carrying the burden of proof that the infection and subsequent death was caused by the accident. Moreover, it does not appear to us to be the more probable hypothesis that the infection was due to the trauma rather than to some natural cause unrelated thereto.

For the reasons stated, the judgment under review is reversed, with costs.